UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**KEITH L. DALY,**

        **Plaintiff,**

v.                                                                              Case No: 6:20-cv-284-GKS-EJK

**COMMISSIONER OF SOCIAL SECURITY,**

        **Defendant.**

REPORT AND RECOMMENDATION

This cause comes before the Court on Plaintiff's appeal of an administrative decision denying his application for Disability Income Benefits ("DIB"), alleging January 20, 2016, as the disability onset date. (Tr. 37–38.) In a decision dated October 3, 2019, the Administrative Law Judge ("ALJ") found that Plaintiff was not disabled. (*Id*.) Plaintiff has exhausted his available administrative remedies and the case is properly before the Court. The undersigned has reviewed the record, the 80-page joint memorandum (Doc. 41), the Commissioner's supplemental authority (Doc. 42), and the applicable law. For the reasons stated herein, the undersigned respectfully recommends that the Commissioner's decision be **AFFIRMED**.

## I. ISSUES ON APPEAL

Plaintiff makes the following arguments on appeal:

1. The ALJ failed to adequately reflect limitations on the use of Plaintiff's hands and likelihood to engage in off-task behavior in the Residual Functional Capacity ("RFC").

2. The jobs cited by the ALJ do not comply with the RFC.

3. The ALJ did not adequately consider the opinions of consultative examiners Dr. Alex C. Perdomo and Dr. Bhaskav Rajir.

4. The ALJ erred in determining Plaintiff could sustain employment given the number of medical appointment Plaintiff must attend monthly.

(*See* Doc. 41.)

## II. STANDARD OF REVIEW

The Eleventh Circuit has stated:

> In Social Security appeals, we must determine whether the Commissioner's decision is supported by substantial evidence and based on proper legal standards. Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion. We may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner].

*Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citations and quotations omitted). "With respect to the Commissioner's legal conclusions, however, our review is de novo." *Lewis v. Barnhart*, 285 F.3d 1329, 1330 (11th Cir. 2002).

### III. The ALJ's Decision

In determining that Plaintiff was not disabled during the relevant period, at step two of the sequential evaluation process,[1] the ALJ found that Plaintiff had the severe impairments of obesity, degenerative changes to the left hip, degenerative changes to the right ankle, bilateral knee osteoarthritis, lumbar spine degenerative disc disease, degenerative changes to the left foot status-post fusion, bilateral tarsal tunnel syndrome, bilateral lower extremity neuropathy, depression, post-traumatic stress disorder, anxiety, diabetes mellitus, bilateral carpal tunnel syndrome, and right hand arthritis. (Tr. 39.) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listing. (Tr. 41.)

Prior to step four, the ALJ found that Plaintiff had the RFC to perform sedentary work,[2] with the following limitations:

> He requires a position that will allow him to shift from a seated position to a standing position and/or stretch at intervals of approximately 30 minutes, provided he does not leave the workstation and the shifting of positions results in him being off-task no more than 1-2 minutes with each position shift; he requires a single point cane for ambulation and is capable of no more than occasional exposure to slippery or uneven surfaces; he is incapable of climbing ladders, ropes, and scaffolds and is incapable of kneeling, crouching, or crawling; he is capable of occasionally climbing ramps and stairs and occasionally balancing and

---

[1] The sequential evaluation process is described in the ALJ's decision. (Tr. 38–39.)
[2] Sedentary work "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties." 20 C.F.R. § 404.1567(a).

stooping; he is capable of frequent rotation, flexion, and/or extension of the neck in all directions; he is incapable of reaching overhead but is otherwise capable of frequently reaching in all directions with the bilateral upper extremities; he is capable of frequently handling, fingering, feeling, and grasping with the bilateral hands, he is capable of no more than occasional exposure to extreme temperatures and vibrations; he must avoid all exposure to hazards, including unprotected heights and moving mechanical parts; he is capable of no more than occasional operation of foot controls with the bilateral feet; he is incapable of operating a motor vehicle for work; he is incapable of traveling for work; he is able to understand, remember, and carry out simple instructions and tasks and work at a consistent pace throughout the workday at simple tasks but not at a production rate pace where each task must be completed within a strict time deadline or within high quota demands; he is able to make occasional, simple work-related decisions in a job that involves only occasional changes in a routine work setting; he is able to sustain concentration and persist at simple tasks up to 2 hours at a time with normal breaks during an 8-hour workday; he is capable of occasional interaction with the general public, co-workers, and supervisors; and he would be off task up to 10% of the workday in addition to regularly scheduled breaks due to medication side effects and the combined effects of his impairments.

(Tr. 44–45.)

At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. (Tr. 50–51.) At step five, the ALJ found that considering Plaintiff's age (42 years old on the date he filed his application), education, work experience, and RFC, jobs existed in significant numbers in the national economy that Plaintiff could perform as a document preparer, electronics assembly person, and touchup screener. (Tr. 52–53.) Therefore, Plaintiff was not disabled. (Tr. 21.)

IV. ANALYSIS

    A. **Whether the ALJ failed to adequately reflect limitations on the use of Plaintiff's hands and likelihood to engage in off-task behavior in the RFC.**

Plaintiff argues that the ALJ's RFC assessment as to Plaintiff's (1) use of his hands and (2) off-task behavior is not supported by substantial evidence. (Doc. 41 at 27–33.)

    1. Use of Hands

As to use of Plaintiff's hands, the RFC states that Plaintiff "is capable of *frequently* handling, fingering, feeling, and grasping with the bilateral hands." (Tr. 45) (emphasis added). However, Plaintiff argues that this limitation conflicts with the record evidence that Plaintiff has handling and grasping limitations that limit him to, at most, *occasional* handling and grasping. (Doc. 41 at 27.)

Plaintiff points to the records of Drs. Ipek, Mahmood, Perdomo, and Buchman and clinical pharmacy specialist "Paul," in support of this assertion, as well as his occupational therapy records. (Doc. 41 at 27–28.) Specifically, these doctors assessed, at various times, right hand pain, bilateral hand pain, and carpal tunnel. (Tr. 120, 184, 191, 204, 208, 1455, 1794, 1835.) Plaintiff also points to his unsuccessful occupational therapy for right hand carpal tunnel. (Tr. 3392–94.) Plaintiff also testified that he has a lot of pain in his wrists and hands, along with tingling and numbness, and that his hands lock up at times. (Tr. 156.) Plaintiff says all this demonstrates that he could no more than occasionally grasp and handle, which conflicts with the ALJ's RFC

assessment.

However, as the Commissioner points out, through this argument, Plaintiff asks the Court to re-weigh the evidence, which is not this Court's role. *Mitchell v. Comm'r, Soc Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014). In his decision, the ALJ recognized Plaintiff's bilateral hand numbness, right hand pain, and right hand arthritis. (Tr. 47.) The ALJ also recognized that Plaintiff engaged in physical therapy for his hand pain. (Tr. 47–48.) However, after evaluating all this, the ALJ found that Plaintiff's "activities of daily living and treatment notes . . . show he is capable of more than occasional manipulative activities." (Tr. 50.) However, in order to accommodate Plaintiff's hand impairments of arthritis and carpal tunnel syndrome, the ALJ determined an RFC with manipulative limitations. (*Id.*) Thus, I recommend that the Court conclude that the ALJ's RFC assessment as to Plaintiff's use of his hands is supported by substantial evidence.

### 2. Off-task Behavior

As to off-task behavior, the RFC states:

> [Plaintiff] requires a position that will allow him to shift from a seated position to a standing position and/or stretch at intervals of approximately 30 minutes, provided he does not leave the workstation and the shifting of positions results in him being off-task no more than 1-2 minutes with each position shift . . . . and he would be off task up to 10% of the workday in addition to regularly scheduled breaks due to medication side effects and the combined effects of his impairments.

(Tr. 44–45.)

Plaintiff argues that two-thirds of this allowable 10% off task behavior would be consumed by shifting from seated to standing positions and/or stretching. (Doc. 41 at 32.) Plaintiff argues that the Vocational Expert ("VE") testified that employers will tolerate only up to 10% of off-task time per day (Tr. 168), but the ALJ impermissibly limited Plaintiff to only one-third of the allowable off-task time for medication side effects (Doc. 41 at 32). While this argument is somewhat convoluted, Plaintiff essentially argues that the ALJ's RFC assessment is not supported by substantial evidence because Plaintiff would be off-task more than 10% of the day given the combination of his medication side effects and need to stand, stretch, and shift positions.

However, as the Commissioner argues, Plaintiff fails to point the Court to any record evidence that would compel a different finding from the one made by the ALJ, and such evidence is required to show error or demonstrate that the ALJ applied the incorrect legal standards. (Doc. 41 at 36.) It is not the Court's role to "decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the Commissioner." *Mitchell*, 771 F.3d at 782. That being the case, I recommend that the Court find that the RFC assessment as to off-task behavior is supported by substantial evidence.

### B. Whether the jobs cited by the ALJ complied with the RFC.

Next, Plaintiff argues that the jobs the ALJ determined Plaintiff could perform fail to comply with the RFC due to their given temperaments, Specific Vocational Preparation ("SVP") levels, and reasoning levels. (Doc. 41 at 38-43.) The RFC states

that Plaintiff is:

> able to understand, remember, and carry out simple instructions and tasks and work at a consistent pace throughout the workday at simple tasks but not at a production rate pace where each task must be completed within a strict time deadline or within high quota demands; he is able to make occasional, simple work-related decisions in a job that involves only occasional changes in a routine work setting . . . .

(Tr. 45.) Given those limitations, the ALJ found that Plaintiff could perform the jobs of document preparer, electronics assembly, and touchup screener. (Tr. 52–53.)

Plaintiff says the ALJ violated this Court's holding in *Washington v. Commissioner of Social Security*, 906 F.3d 1353, 1356 (11th Cir. 2018), which requires the ALJ to identify and resolve "apparent conflicts" between the Department of Labor's Dictionary of Occupational Titles ("DOT") and VE testimony. An "apparent conflict" is "a conflict that is reasonably ascertainable or evident from a review of the DOT and the VE's testimony." *Id.* at 1365.

### 1. Temperament

Plaintiff argues that the jobs identified by the VE have a temperament rating of T, representing situations that require the precise attainment of set limits, tolerances, and standards. (*See* Doc. 41, Exs. A at 5, B at 3, C at 6.) The job of document preparer also has a temperament rating of V[3] for performing a variety of duties, often changing from one task to another of a different nature without loss of efficiency or composure. (*Id.* Ex. A at 5.) Plaintiff argues that a job that requires attaining set limits, tolerances,

---

[3] A job can have more than one temperament rating.

- 8 -

and standards (temperament T) "covers strict deadlines which are prohibited by the RFC." (Doc. 41 at 39.) Moreover, Plaintiff asserts, a job that requires "often changing from one task to another" (temperament V) is more than that allowed by an RFC of "only occasional changes in a routine work setting." (*Id.*)

The Commissioner responds that there is no apparent conflict with the RFC limitations and the temperament T jobs of electronics assembly and touchup screener. (Doc. 41 at 51.) Temperament T jobs do not relate to jobs with "strict deadlines." Rather, Temperament T jobs cover certain levels of performance and the steps taken to meet that level, not about the pace at which the worker works or how much work he completes. (*See* Doc. 41-7, U.S. Dep't of Labor, *The Revised Handbook for Analyzing Jobs* at 10-4 (1991)). Thus, Plaintiff has failed to demonstrate the existence of an "apparent conflict" since there is no such conflict present.

The undersigned does not reach the issue of whether an apparent conflict exists as to Temperament V for the document preparer job and the RFC because the ALJ found that the jobs of electronics assembly and touchup screener exist in significant numbers in the national economy that Plaintiff could perform. (Tr. 52); 20 C.F.R. § 404.1566(b) ("Work exists in the national economy when there is a significant number of jobs (*in one or more occupations*) having requirements which you are able to meet with your physical or mental abilities and vocational qualifications" (emphasis added).).

### 2. SVP Levels

Plaintiff next states that all of the jobs identified by the ALJ carry an SVP level of 2, which are jobs that can be learned from anything beyond a short demonstration up to one month of training. (Doc. 41 at 39.) But Plaintiff argues that the Social Security Administration found that Plaintiff could perform only work that required a very short, on the job training period, which would equate to an SVP level of 1. (*Id.* citing Tr. 197.)

However, as the Commissioner correctly points out, the VE did not provide testimony about this limitation because the ALJ did not include it in the hypothetical questions posed to the VE. (Doc. 41 at 54.) Nor was the ALJ required to do. The evidence Plaintiff cites in support of his argument is an Explanation of Determination form related to an initial denial of Plaintiff's disability claim by the state agency. Plaintiff cites no authority for the proposition that the Explanation of Determination contains any information that binds or directs the ALJ to make a certain finding. Rather, such findings are evidence that is "inherently neither valuable nor persuasive to the issue of whether [a claimant] is disabled" and an ALJ need not provide analysis about whether such evidence was considered. 20 C.F.R. § 404.1520b(c)(2); *Wilkins v. Comm'r of Soc. Sec.*, No. 6:19-cv-01265-PGB-EJK, at *8–9 (M.D. Fla. July 30, 2020), *report and recommendation adopted* (M.D. Fla. Aug. 14, 2020).

### 3. Reasoning Levels

Finally, Plaintiff argues that the ALJ did not resolve the conflict between the RFC's limitation to simple instructions and tasks and the GED reasoning level of the jobs. (Doc. 41 at 40.) The document preparer job has a GED reasoning level of 3, which requires a person to apply common sense understanding and to carry out instructions furnished in written, oral, or diagrammatic form, and to deal with problems involving concrete variables in or from standardized situations. (Doc. 44, Ex. A at 3.) The other two jobs of electronics assembly and touchup screener have a GED reasoning level of 2, which requires the ability to apply common sense understanding, carry out detailed but uninvolved written oral instructions, and deal with problems involving a few concrete variables in or from standardized situations. (*Id.*, Ex. B at 1, C at 7.) Plaintiff asserts that these requirements surpass the RFC's limitation to simple instructions and tasks, which correspond to a GED reasoning level of 1. (Doc. 41 at 40.)

The Commissioner argues that no apparent conflict exists between the ability to complete simple instruction and tasks and a GED reasoning level of 2. (*Id.* at 44–51.) Subsequent to the filing of the parties' joint memorandum, the Eleventh Circuit issued a published, binding decision, *Buckwalter v. Acting Commissioner of Social Security*, 997 F.3d 1127, 1134 (11th Cir. 2021), that confirms the Commissioner's argument. Therein, the Eleventh Circuit held that "[t]here is not an apparent conflict . . . between [plaintiff's] RFC, which limits her to the ability to 'understand, carry-out, and remember simple instructions,' and the identified positions with a reasoning level of

two." *Id.* Therefore, as Plaintiff has not identified an "apparent conflict" that the ALJ failed to resolve, the undersigned recommends that the Court reject this argument.

### C. Whether the ALJ adequately considered the opinions of consultative examiners Dr. Perdomo and Dr. Rakir.

Plaintiff next argues that the ALJ erred in discounting the opinions of consultative examining physicians Dr. Perdomo and Dr. Rakir. (Doc. 41 at 56.) Specifically, Plaintiff argues that the ALJ rejected Dr. Perdomo's and Dr. Rakir's opinions without sufficient explanation. (Doc. 41 at 56–60.) Because Plaintiff applied for benefits after March 27, 2017, the Commissioner asserts the new set of regulations apply, which Plaintiff does not contest. (Doc. 41 at 62.)

Under the revised regulations, the Commissioner no longer "defer[s] or give[s] any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [] medical sources." 20 C.F.R. §§ 1520c(a), 416.920c(a). Rather, the Commissioner must "consider" the "persuasiveness" of all medical opinions and prior administrative medical findings. *Id.* To that end, the Commissioner considers five factors: 1) supportability; 2) consistency; 3) relationship with the claimant;[4] 4) specialization and 5) other factors "that tend to support or contradict a medical opinion or prior administrative medical finding." *Id.* §§ 404.1520c(c); 416.920c(c).

---

[4] This factor combines consideration of the following issues: length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and examining relationship. 20 C.F.R. §§

The most important of these factors are supportability and consistency, and the ALJ must explain the consideration of those two factors. *Id.* §§ 404.1520c(a), (b)(2); 416.920c(a), (b)(2). The ALJ may, but is not required to, explain how he or she considered the other factors (i.e., relationship with claimant, specialization, and "other factors"). *Id.* §§ 404.1520c(b)(2); 416.920c(b)(2).

### 1. Dr. Perdomo

The ALJ found the opinions of Dr. Perdomo "minimally persuasive." (Tr. 49.) Dr. Perdomo opined that Plaintiff could stand and walk for two to three hours in an eight-hour day and could sit for three to four hours. He also opined that Plaintiff should avoid repetitive bending, stooping, crouching, squatting, or kneeling. (*Id.*) In discounting this opinion, the ALJ found that the "treatment record does not support a conclusion that [Plaintiff] is incapable of work eight hours a day," as Dr. Pedomo suggested, and that the RFC limited him to sedentary work and included a sit/stand option permitting him to shift positions. (*Id.*) Further, the Plaintiff's daily activities and testimony at the hearing showed he was capable of occasional bending and stooping. (*Id.*)

The undersigned recommends that the Court find the ALJ set forth sufficient reasons for considering Dr. Perdomo's opinion to be only minimally persuasive. The ALJ relied on specific medical records identified in his opinion in making this finding, and it is not this Court's duty to re-weigh this evidence. Further, Dr. Perdomo's

---

404.1520c(c)(3)(i)–(v); 416.920c(c)(3)(i)– (v).

opinion conflicted with Plaintiff's own testimony, which Plaintiff does not contest.

### 2. Dr. Rakir

The ALJ also found Dr. Rakir's opinions "minimally persuasive." Dr. Rakir found that Plaintiff had moderate to marked limitations in his understanding and memory, concentration and persistence, social interaction, and adaptation. (Tr. 49.) But the ALJ found that the opinion consisted of a check the box form with no explanation for his selections. (*Id.*) The ALJ also found that Dr. Rakir's opinion was "inconsistent with [plaintiff's] admitted activities of daily living and treatment notes showing him to have an intact memory, normal attention span, and normal concentration.) (*Id.*). Again, the undersigned recommends finding that these reasons are supported by substantial evidence for the same reasons stated above as to Dr. Perdomo. The ALJ relied on specific medical records identified in his opinion in making this finding and it is not this Court's duty to re-weigh this evidence. Further, Dr. Rakir's opinion conflicted with Plaintiff's own testimony, which Plaintiff does not contest.

### D. Whether the ALJ erred in determining Plaintiff could sustain employment given the number of medical appointments Plaintiff must attend monthly.

Lastly, Plaintiff argues that, in failing to reflect Plaintiff's need for additional work absences in excess of the range tolerated by employers, the ALJ's decision was not supported by substantial evidence. (Doc. 41 at 73–74.) The VE testified that employers will tolerate absenteeism ranges between one and two days per month, including having to leave early or arrive late, but that anything beyond that would be

work preclusive. (Tr. 168–69.) Plaintiff points to the record to demonstrate that "[i]n the less than 59 months between the alleged onset date of January 20, 2016, and the last date for which the record contains a medical record, November 27, 2019, Plaintiff has had at least 172 medical appointments," the average of which is just under three appointments per month. (Doc. 41 at 73.)

The Commissioner responds that the Eleventh Circuit has already considered—and rejected—Plaintiff's argument that the number of medical appointments renders a plaintiff disabled, in the unpublished decision of *Cherkaoui v. Commissioner of Social Security*, 678 F. App'x 902 (11th Cir. 2017). Although unpublished opinions of the Eleventh Circuit are not binding authority, the undersigned finds that the holding in *Cherkaoui* is persuasive and that Plaintiff's argument should be rejected. *See* 11th Cir. R. 36-2. In *Cherkaoui*, the Eleventh Circuit held:

> [W]hether the number of medical appointments affects [plaintiff's] ability to work is not an appropriate consideration for assessing her residual functional capacity because that determination considers only the functional limitations and restrictions resulting from medically determinable impairments. *See* SSR 96-8p. **The number of medical appointments she attended is not a functional limitation caused by her impairments that would affect her physical or mental capabilities.** Moreover, nothing in the record indicates that Cherkaoui was required, or would be required, to schedule her medical appointments during working hours so that they would interfere with her ability to obtain work.

*Cherkaoui*, 678 F. App'x at 904.

The same reasoning holds true here. Simply because Plaintiff has attended a number of medical appointments in the past does not dictate his functional limitations, and Plaintiff has not otherwise demonstrated he could not attend his appointments during times outside working hours. Therefore, the undersigned recommends the Court reject Plaintiff's argument.

**V.     RECOMMEDATION**

Accordingly, it is **RESPECTFULLY RECOMMENDED** that:

1. The Commissioner's decision be **AFFIRMED**.

2. The Clerk of Court be **DIRECTED** to enter judgment accordingly and close the file.

### NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.

Recommended in Orlando, Florida on July 29, 2021.

_____
EMBRY J. KIDD
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record